to the court may seem just. The court granted the motion, but we· think erroneously. The judgments for costs were in favor of Mrs. Whitney. These costs belonged to her. They were indemnity to· her. for the expense she was put to in the action. Costs belong to the client, and not to the attorney. Starin v. Mayor, 106 N. Y. 82, 12 N. E. 643; McIlvaine v. Steinson, 90 App. Div. 77, 85 N. Y. Supp. 889; Barry v. Third Ave. R. Co., 87 App. Div. 543, 84 N. Y.. Supp. 830. There is no question here of an agreement between an attorney and client. The simple point is to whom do the costs be-· long? They belonged to Mrs. Whitney, and she had a right to satisfy the judgments awarding them. The subject for consideration is not the lien of an attorney, but the right of the owner of a judgment to satisfy it.

The order appealed from was wrong, and should be reversed, with $10 costs and disbursements, and the motion denied, with $10· costs. All concur.

---

## SCHWAB MFG. CO. v. AIZENMAN.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

1. CHATTEL MORTGAGES—FILING—FAILURE TO REFILE—EFFECT AS AGAINST· SUBSEQUENT MORTGAGE.

Under Lien Law (Laws 1897, pp. 537, 538, c. 418), §§ 92, 95, requiring· chattel mortgages to be filed in the town where the mortgagor resides, and declaring such mortgages invalid, as against creditors and subsequent purchasers or mortgagees in good faith, after the expiration of a year from the time of filing, unless refiled, the failure to refile a chattel mortgage· does not render the same invalid as against, nor subordinate to, a subsequent mortgage executed after the first mortgage has been once filed, .and while such filing is in force.

2. SAME—RIGHTS OF CREDITORS—NECESSITY OF OBTAINING LIEN.

While the failure to refile a chattel mortgage at the expiration of a year, as required by Lien Law (Laws 1897, p. 538, c. 418) § 95, renders the same invalid as against subsequent creditors, yet such a creditor acquires no lien upon the mortgaged property, which he can enforce as against the mortgage, until he has either obtained a judgment and levied upon the property by execution, or has placed the property in the custody of the court through the medium of a receiver.

3. SAME—JUNIOR MORTGAGES—RIGHTS OF HOLDER—SEIZURE OF PROPERTY.

The assignee of a junior chattel mortgage may seize and sell the property for the debt represented thereby, subject to the interest of the senior mortgage, and free from interference by any one not having a prior claim.

4. SAME—MORTGAGEE IN POSSESSION—INTERFERENCE WITH RIGHTS—CONVERSION.

A senior mortgagee of a chattel, who has assigned his mortgage and retains no interest therein, has no right, as against the holder of a junior mortgage, who has reduced the mortgaged property to his possession, to· seize the property, and is guilty of conversion if he does so.

Appeal from Trial Term, New York County.

Action by the Schwab Manufacturing Company against Jacob Aizenman. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN,. PATTERSON, and INGRAHAM, JJ.

S. S. Myers, for appellant.
Abraham Brekstone, for respondent.

HATCH, J.   The judgment demanded in the complaint was for a return of property converted, or, in case possession of the same could not be given, that a recovery be had in damages for the value. The action is essentially an action for conversion.   It appeared that the property converted was a Sanborn embossing press, owned by the firm of Spiegel & Bresant.   Upon the 24th day of May, 1901, a chattel mortgage was executed, covering the said press, by Spiegel & Bresant to the defendant, to secure the payment of $100.   Said mortgage was filed upon the same day in the office of the register of the county of New York.   It was subsequently assigned to Herman Radzinsky, and at the time of the conversion of the property Radzinsky was the owner.   On the 14th day of October, 1901, another chattel mortgage was executed by Spiegel & Bresant to Louis Weiler.   It covered the property in question.   On the 17th day of January, 1902, this mortgage was assigned to the plaintiff, but the assignment was not delivered to it until some time in the following June, and it was recorded on the 18th day of that month. Upon the 22d day of June, 1902, the plaintiff, by a city marshal, acting as his agent, took possession of the said press by virtue of the mortgage thus assigned to it.   The marshal left it in the care of Morris Spiegel until he could arrange for its removal.   He instructed Spiegel to notify all persons that the press was in his possession by virtue of the mortgage owned by the plaintiff.   After the plaintiff had thus taken possession of the press, the defendant made claim to the same by virtue of his mortgage of May 24, 1901. He was informed by Spiegel that the marshal had taken possession of the press for the plaintiff under his mortgage.   The defendant nevertheless seized the press and removed it from the premises.

The mortgage held by Radzinsky had not been refiled, as required by sections 92 and 95 of the lien law (Laws 1897, pp. 537, 538, c. 418); and the plaintiff claims that the failure to refile rendered such mortgage inoperative as a lien against its mortgage under which it took possession, and that plaintiff's mortgage became a lien to which the defendant's mortgage was subordinate.   This contention upon the part of the plaintiff was long ago exploded. Meech v. Patchin, 14 N. Y. 71; Beskin v. Feigenspan, 32 App. Div. 29, 52 N. Y. Supp. 750.   The plaintiff also claims that it is a creditor of Spiegel & Bresant, and therefore had the right to take the property independent of its mortgage.   While the failure to refile the defendant's mortgage made it unenforceable as against subsequent creditors and mortgagees, yet, before such creditor acquires a lien upon the property which he can enforce as against the mortgage, he must have invoked the judicial process of the court, either by obtaining a judgment and levying upon the property by execution, or by placing it in the custody of the court through the medium of a receiver.   Kitchen v. Lowry, 127 N. Y. 53, 27 N. E. 357.   Such doctrine is announced in Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11, relied upon by the plaintiff, where it was held

that until a general creditor obtained a lien upon the property the mortgagor could give good title to the mortgagee holding the unfiled mortgage, where such transfer was in payment of a bona fide debt. None of the authorities contravene this rule. The plaintiff, however, acquired perfect title to the mortgage which was assigned to it. At the time of such assignment the mortgage was a valid lien upon this property, subject only to the defendant's right under his mortgage, and it so remained in the hands of the plaintiff. It had the right, subject to the interest of the first mortgage, to seize and sell the property; and no one, unless he held a prior claim, could interfere with it. The plaintiff could not make such mortgage operate as a lien in its favor for a subsequent indebtedness not covered by its terms. As to that debt it stood as a general creditor, having no lien upon the property; but, as to the debt represented by the mortgage, it was the owner, and for such debt it could enforce the mortgage. This it attempted to do, as there was no claim that it seized the property upon any other right or lien aside from the mortgage. As the matter stood, the defendant, had he been the owner of the mortgage and acting thereunder, could have seized and taken possession of the property by virtue thereof, even though it was unfiled, as the lien thereof was superior to that of the plaintiff. The difficulty with the defendant's position, however, is that he was not the owner of the mortgage, and stood in relation thereto as a mere stranger. By his answer he averred that the mortgage held by him had been assigned to Herman Radzinsky, and that thereby he had transferred all of his right, title, and interest in and to the same. Being interrogated upon the trial concerning this assignment and as to the whereabouts of the assignee, his counsel stated:

"I will concede, for the purpose of this action, that we are responsible for taking that machine out. We are willing to take that responsibility. The Court: I shall so charge, and that it matters not who owns the mortgage [defendant's], and, if you are entitled to recover at all, you are entitled to recover against this man."

The effect of this admission and the ruling of the court was that, if the defendant's assigned mortgage was valid as against plaintiff's mortgage, there existed in the defendant the right to seize and take the press from the possession of the marshal, even though he had no interest in such mortgage. In this regard the court further held and stated, upon a motion for the direction of a verdict by the plaintiff, "that the Weiler mortgage is out of the case. I do not see how it can have any standing here." In the charge to the jury the court said, speaking of the plaintiff's and of the Weiler mortgage, "They could not keep that mortgage alive by transferring it from Weiler's debt, as a security for that debt, to the plaintiff's debt, and that attempt was a failure." And again, in speaking with reference to the plaintiff and the mortgage, the court said, "They got no more rights than Spiegel had, and consequently Spiegel could not defeat the defendant's mortgage because it was not refiled." The learned court was clearly wrong in this ruling. The assignment from Weiler carried with it all his rights to enforce the

mortgage. The notes for which it was security were also transferred, so that the plaintiff did not stand in the shoes of Spiegel & Bresant. It stood in the shoes of Weiler, and this without regard to its unsecured debt. Consequently it had the legal right to seize the property under that mortgage, so far as the defendant was concerned. The latter, so far as appears by this record, had become a mere stranger to the mortgage formerly held by him. He had parted with the title, and no longer had any interest in it. Consequently, when he seized the press and took it from the possession of the marshal, he was a wrongdoer, and was guilty of an act of conversion, for, as between himself and the plaintiff, the latter was entitled to the possession of the property, and the possession of the marshal could only be defeated by showing a superior title. This the defendant did not do.

This error was not cured by the testimony of the defendant's attorney respecting the demand, in view of the express concession made by the defendant, and the ruling of the court in connection therewith. Such holding shut off further inquiry by the plaintiff as to the Radzinsky assignment, and forestalled any attack thereon. The statement of counsel that he represented, in making the demand, both the defendant and Radzinsky, was in direct contradiction of his admission, and was incompetent, under the ruling of the court. It is also evident that he did not know Radzinsky, and had had no communication with him. The case went to the jury upon the theory that the plaintiff was a mere trespasser, and had no rights under its mortgage. In point of fact and law, it had the clear legal right to seize thereunder, while it stands admitted that the defendant was a stranger, and therefore a wrongdoer.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.